————————o————————

## No. 4128.

### (Court of Appeal, Parish of Orleans.)

### MRS. WIDOW FREDERICK KRANTZ AND JULIAN B. HABANS vs. J. J. NOONAN AND S. W. HIGGINBOTHAM.

### ON MOTION TO DISMISS.

Under Act. 52 of 1904, the Supreme Court is given the dis-

cretion, when an appeal has been wrongfully lodged in that Court, to transfer said appeal to the Court of Appeal conditioned upon appellant making affidavit within ten days that the appeal is not taken for delay, but appellant's failure to avail himself of the provisions of the Act of 1904 and of the order of transfer made under it by the Supreme Court, operates as a dismissal and not as an abandonment of his appeal, and places him in the same attitude that .he would have occupied prior to the enactment of the law. His rights to a devolutive appeal within the year after judgment is not lost to him.

Appeal from Civil District Court, Division "E."

N. E. Humphrey, J. W. Duffy & R. J. Maloney, for Plaintiff and Appellant.

Cage Baldwin & Crabites, for Defendant and Appellee.

ESTOPINAL, J. Plaintiffs being cast on the trial of this case in .the Court a quo, took a suspensive appeal to the Supreme Court, and upon furnishing bond and otherwise observing an appeal from that Court to this, transfered the appeal to this Court conditioned upon the making by appellants of an out jurisdiction ratione materiae, it thereupon, conformably to the provisions of the Act of the Legislature No. 56 of 1904 conferring the discretion on the Supreme Court of transfering an appeal, from that Court to this, transfered the appeal to this Court conditioned upon the making by appellants of an affidavit within ten days, that the appeal was not taken for delay.

Appellants failed to make the required affidavit, but thereafter applied for and obtained a devolutive appeal to this Court.

Defendants ·and appellees now ask that the devolutive appeal subsequently taken to this Court be dismissed on the ground that the suspensive appeal, *already perfected,* aver appellees, not having been *prosecuted* was an abandonment of the suspensive appeal, and that in consequence no other appeal could be taken.

It is conceded that if the suspensive appeal taken in this case, with which the Supreme Court was vested by reason of the perfection of said appeal in that Court, had been dismissed for want of jurisdiction, the right of appellants to a devolutive

appeal would not be effected. But, it is urged, the appeal was not dismissed by the Supreme Court, but under the provisions of the Act 56 of 1904, its integrity was preserved, its character of *perfection* was not *impaired,* and appellants' failure to *prosecute* the *appeal* by conforming to a condition imposed by the Act cited supra, was a *failure to prosecute* the appeal after *perfecting it,* and therefore an abandonment thereof This theory of the law and its effect was presented in an exceptionally able manner by counsel, and was made to appear so plausible as to be well-nigh convincing.

We do not, however, think the position tenable.

It is quite true, and supported by abundant authority, that if one abandons an appeal by failure to prosecute the same after the jurisdiction of the Appellate Court *has attached,* he cannot afterwards take another appeal, but a failure to *complete* or *perfect* the suspensive appeal does not preclude one from taking a devolutive appeal within the year after judgment.

This discussion may be pitched on two propositions, in both of which our deductions are adverse to the contentions of movers herein. The questions are first: "Had the appeal to this Court been perfected?" Second: "Was not the decree of the Supreme Court, denying its jurisdiction in the matter and the transfer of the case to this Court, tantamount to a dismissal of the appeal, leaving appellant in the same position as though the Act of 1904 did not exist?"

Taking up the first question we find, that quoad the Supreme Court, *the appeal had been perfected,* but when that Court divested itself of jurisdiction and transferred the appeal to this Court, *by the transfer alone, the jurisdiction did not attach here.* The making of an affidavit by appellant was as sacramental to their appeal as the giving of a bond. Jurisdiction does not vest until the bond is given. Neither did it vest in this Court in the case at bar before the affidavit was made. The failure of appellants to make the affidavit was not a failure to prosecute, but was a failure to perfect their appeal. The appeal was on its way to this Court by an extraordinary route for which exceptional conditions are imposed looking to its perfection, and a non-observance of these exceptional conditions is not a failure to prosecute and therefore an abandonment, but is a failure to perfect the appeal.

266

Whatever doubt there could have been as to the right of appellants to a devolutive appeal in this case must be removed by the decree of the Supreme Court, and this brings us to a discussion of the second proposition indicated in this opinion.

It is elementary and conceded, that prior to the enactment of the law of 1904 the dismissal of a suspensive appeal did not bar a devolutive appeal. It is also conseded that the said law of 1904 was enacted in the interest of appellants. Would it then be reasonable to so construe that law as to make appellant's position worse thereunder. This was clearly not the intent of the lawmaker.

The Supreme Court after declaring that it had no jurisdiction, ratione materiae, it, in accordance with Act 52 of 1904, transferred this appeal to the Court of Appeal conditioned upon the making by the appellants of an affidavit within ten days and further ordering, *that if said affidavit* is not made within ten days the *appeal should be and is hereby dismissed.*

We find, therefore, that the Supreme Court has by its adjudication in this case under the Act of 1904; placed the appellants in the same position or attitude as though the appeal had been dismissed outright. The Act of 1904 is, in our opinion a convenience to litigants, a law commendable for many reasons, but the appellant. who fails to avail himself of its provisions does not thereby suffer loss of rights enjoyed prior to the passage of the law.

In effect the Supreme Court's decree under the law giving them authority to transfer appeals said this to appellants: "Your appeal is wrongly lodged and the Court must dismiss it, but under the law your suspensive appeal may be preserved to you and it will be preserved to you by the Court provided you care to observe certain conditions imposed by law. Otherwise you must seek relief in a Court of proper jurisdiction in the ordinary way." It was optional with appellants to preserve their suspensive appeal or to come to this Court on a devolutive appeal. Another ground urged for the dismissal of this appeal is based upon the idea that the payment of the costs by the appellants prior to taking the present appeal operated as an acquisence in the judgment and that in consequence appellants are estopped from further prosecuting their suit.

Plaintiffs and appellants had not exhausted their remedies

for the relief sought by them but the judgment below dismsising their suit carried with it the costs of the suit, and out of abundance of caution and to avoid execution for said costs, these were properly paid.

Besides, the correspondence submitted indicates anything but an acquisence. Plaintiff's plainly state that they pay the costs and leave other matters to be settled b ythe Courts.

The motion to dismiss is therefore denied.

February 18, 1907.

## ON THE MERITS.

1. The shore of Lake Ponchatrain as well as the beds of these waters and the soil under the water belong to the State of Louisiana by virtue of her sovereignty and are held by her in trust for the use of all men.
2. He who appropriates to his exclusive use any part or portion thereof—who makes that personal to himself which ought to be common to many—by enclosures or by building and constructing thereon, encroaches upon the rights and casements held by the sovereign of the public and thus commits a purpresture.
3. If in addition to this mere encroachment upon a public right there operates therefrom an obstruction to its free use and the public is subjected to some degree of inconvenience or annoyance by the purpresture, the encroachment likewise becomes a public nuisance.
4. In the case of a mere purpresture, which is not necessarily a public nuisance; or when the encroachment is both a purpresture and a public nuisance, the action to abate it may be maintained by the sovereign alone and may not be maintained by a private person unless some private right has been invaded and he has sustained, or is likely to sustain some special damages not suffered by the general public.

MOORE, J. Plaintiffs are tax payers and reside in that part of the city of New Orleans known as Milneburg, which borders a portion of the southern coast of Lake Ponchartrain.

Between their respective residences, which face the Lake, and the shore line of the latter a public street, which is 49'.0".2" in width, intervenes.

At about 245' 0" 6"' to the west of plaintiffs' properties and in a northwesterly direction, and 199 feet diagonally therefrom

268

and out into the waters of the Lake at a distance of 127 feet from its shore line, the defendants were engaged in the erection of a building to be used and employed by them and their families as a retreat for their outings or pleasure trips, or what is known in the nomenclature of similar squatters, as a "Camp," the coast line at this point being dotted with similar "Camps."

No license or authority of any sort was ever obtained by the defendants for thus encroaching on public property; appropriating to their exclusive use a portion of the shore of Lake Pontchartrain and enclosing the waters thereof and the bed and soil under the water.

Alleging this want of authority in the defendatns so to do; and that the said structure will interfere with free use of the lake; "that the said building will contain toilets from which all sorts of foecal matter and other refuse will be thrown into the lake, and then washed upon the shore and thereby become dangerous to the public health and would constitute a nuisance to petitioners and other residents of Milneburg; that the building contemplated by the defendants is lower than the high water mark, and, in consequence, any structure put upon the pilings would become dilapidated and loose, would wash upon the shore, and would cause irreparable injury to the properties of petitioner and would be a constant menace to the lives of themselves, their families and the general public," the plaintiffs sought by injunction to have removed so much of the structure as was already completed and to restrain the further completion of the contemplated buildings.

The answer is substantially a general denial coupled with a plea of no cause of action.

There was a judgment dissolving the preliminary injunction and dismissing plaintiffs' suit.

From this judgment the latter appealed.

The tide waters and the shore of Lake Pontchatrain, the beds of these waters and the soil under the waters belong to the State of Louisiana and became hers by virtue of her sovereignty immediately after her admission into the sisterhood of States, and they are held by her in trust for the common use of all men.

He who appropriates to his exclusive use any part or portion

thereof—"makes that personal to himself which ought to be common to many"—2 Ins. 38,272 by enclosures, or by buildings held by the sovereign of the public and thus commits a purpresture. If in addition to this mere encroachment upon a public right there operates therfrom an obstruction to its free use and the public is subjected to some degree of inconvenience or annoyance by the purpresture, the encroachment likewise becomes a public nuisance, and, in either case, an action will lie for its abatement.

In the case of a mere purpresture. which is not necessarily a public nuisance, the action may be brought by the sovereign alone.

Where the encroachment is both a purpresture and a public nuisance the law is the same, hence no private person may maintain an action for its abatement *unless some private right has been invaded and he has sustained, or is likely to sustain special damages therefrom.*

"The remedy for a purpresture is either an information of intrusion at common law or by injunction in equity at suit of the Attorney General.

"The effect of a judgment at law is the abatement of the erection complained of whether it be a nuisance or not. When the structure is both a purpresture and a nuisance, the injury to the right of the King and of his subjects may be redressed in the same proceeding." Gould on Waters No. 21.

"A bill to enjoin a threatened public nuisance may be maintained by the Attorney General (or any other law officer who is empowered to represent the Government), either ex-officio or ex-relatione, or by a private person who is likely to sustain special damages therefrom, but may not be maintained by a private person who will suffer no injury beyond that which he will suffer in common with the general public." Ibid No. 122.

See also A. & E. Ency. Vol. 21, p. 709 and Spooner vs. McConnell 1 McLean (U. S.) 337 Works etc. vs. Junction R. Co., 5 Ibid 425 St. Louis vs. Knapp etc. Co. 2, McCrary (U. S.) 516 Osburn vs. Brooklyn etc. 5 Black 366, Currie vs. West Shore etc. Co. 6 Ibid 487 Illinois etc. R. R. Co. vs. St. Louis 2 Dill (U. S.) 70.

In the instant cause the encroachment complained of unquestionably constitutes a purpresture and the evidence conclusively

establishes that it is likewise a public nuisance; but it is not shown that the exercise of any private right of the plaintiffs is obstructed, or that the encroachment has caused, or is likely to cause any special damage to them, different from that which has been, or may be sustained by the genral public

The act complained of, therefore, does not constitute a private nuisance, hence the plaintiffs are without right to maintain an action to abate it.

"A private person suing either in his own behalf or on behalf of himself and others, cannot obtain an injunction against a public nuisance, unless he has suffered, or will suffer, some special damage not suffered by the general public." Taylor vs. Portsmouth, etc., R. Co. 91 Mich. 193.

A private action for a public nuisance is maintainable by one who suffers therefrom some particular loss or damage beyond that suffered by him in common with others affected by the nuisance." Knowles vs. Penn R. R. Co. 175 Pa. State 623 (52 A. State Rep. 860).

"A damage to be special within the meaning of the rule must result directly from the nuisance and not merely as a secondary consequence therfrom and must differ in kind, and not merely in extent or degree from that which the general public sustained." S. C. St. Bt. Co. vs. Wilmington R. R. 46 S. C. 327 (57 Am. St. Rep. 688).

For these reasons the judgment appealed from is affirmed. Estopinal, J., not having heard the argument takes no part.

April 8. 1907.

Rehearing refused May 6, 1907.

Writ granted by Supreme Court June 18, 1907.

Nov. 4, 1907, remanded by Supreme Court.